

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICARDO QUINTANILLA-MEJIA,

        Petitioner,

v.

WILLIAM BARR, Attorney General,
THOMAS FEELEY, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement, JEFFREY
SEARLS, Facility Acting Director Buffalo
Federal Detention Facility,

        Respondents.

---

**DECISION AND ORDER**

6:18-CV-06830 EAW

## INTRODUCTION

*Pro se* petitioner Ricardo Quintanilla-Mejia ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued detention is unconstitutional and seeks immediate release. (*Id.* at 12). Petitioner has also filed a motion for release from custody. (Dkt. 6). For the reasons discussed below, the Petition and the motion for release from custody are both denied.

## BACKGROUND

Petitioner is a native and citizen of El Salvador. (Dkt. 7-1 at ¶ 5). In or about December 1991 or January 1992, Petitioner entered the United States without being admitted or inspected by an immigration officer. (*Id.* at ¶ 5; *see also* Dkt. 6 at 1). Petitioner

states that in 1994, he became part of the "MS13 gang . . . while living in California," and that he did so "because he was a drug addict at the time." (Dkt. 6 at 1). On August 30, 1999, Petitioner was criminally convicted in California of possession of a controlled substance (heroin). (Dkt. 7-1 at ¶ 6). The Petition further indicates that on an unspecified date, Petitioner was convicted of misdemeanor driving while intoxicated under Minnesota law. (Dkt. 1 at 5).

Petitioner was served with a Notice to Appear ("NTA") on September 10, 1999, charging him with being removable pursuant to § 212(a)(2)(A)(i) and (a)(6)(A)(i)(II) of the Immigration and Nationality Act (the "INA"). (Dkt. 7-1 at ¶ 7). An immigration judge ("IJ") ordered Petitioner removed from the United States to El Salvador on December 14, 1999, and Petitioner was deported on February 11, 2000. (*Id.* at ¶¶ 9-10).

On or about May 1, 2001, Petitioner re-entered the United States without being admitted or inspected by an immigration officer. (*Id.* at ¶ 11). He was arrested by United States Immigration and Customs Enforcement ("ICE") on July 31, 2008, and issued an I-871 Form (Notice of Intent/Decision to Reinstate Prior Order) on August 1, 2008. (*Id.* at ¶ 12). Petitioner was criminally prosecuted and convicted of illegal re-entry after deportation subsequent to a felony conviction, and incarcerated for eight months. (*Id.* at ¶ 13). On April 1, 2009, he was taken into ICE custody, and he was removed to El Salvador on May 15, 2009. (*Id.* at ¶¶ 13-14).

On October 3, 2016, Petitioner re-entered the United States without being admitted or inspected by an immigration officer. (*Id.* at ¶ 15). On October 6, 2016, Petitioner encountered a border patrol agent in the Rio Grande Valley in Texas, and was taken into

custody. (*Id.*). Petitioner was again served with an I-871 Form, pursuant to § 241(a)(5) of the INA. (*Id.*).

Petitioner was served with a Warning for Failure to Depart in violation of § 243(a) of the INA on November 14, 2016. (*Id.* at ¶ 17). On January 10, 2017, Thomas P. Brophy, the Deputy Field Office Director of the Batavia Federal Detention Facility, made an initial determination that Petitioner's detention should continue pending his removal. (*Id.* at ¶ 18). A hearing was scheduled before an IJ on January 11, 2017, but was adjourned for two weeks because Petitioner requested time to retain a lawyer and to file an I-589 Form (Application for Asylum and for Withholding of Removal). (*Id.* at ¶ 19).

On January 25, 2017, an IJ held a hearing and determined that Petitioner should be detained because of his prior criminal convictions. (*Id.* at ¶ 20). That same day, Petitioner submitted his I-589 Form. (*Id.*). A hearing on Petitioner's I-589 application was held on March 16, 2017, and continued to May 19, 2017. (*Id.* at ¶ 20-21).

On April 13, 2017, Petitioner moved for a bond hearing pursuant to the Second Circuit Court of Appeals' decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). (*Id.* at ¶ 22). The bond hearing was rescheduled several times (*see id.* at ¶¶ 23-24), but the IJ ultimately conducted a hearing and denied Petitioner bond on July 27, 2017, finding that he posed a risk of flight. (*Id.* at ¶ 26; *see also* Dkt. 7-2 at 17). The IJ further denied Petitioner's application for protection from removal. (Dkt. 7-1 at ¶ 26).

Petitioner appealed the IJ's decision regarding his request for withholding of removal to the Board of Immigration Appeals (the "BIA"), which dismissed the appeal on December 26, 2017. (*Id.* at ¶¶ 27, 30). Petitioner filed a Petition for Review ("PFR") with

the Second Circuit on January 12, 2018. (*Id.* at ¶ 31). Petitioner was granted a stay of removal in connection with his PFR. (*Id.*).

Petitioner also appealed the denial of his request for bond to the BIA, which dismissed the appeal on October 4, 2018. (*Id.* at ¶ 36). Petitioner's custody status was reviewed on the following dates: October 2, 2017; April 6, 2018; July 12, 2018; and October 19, 2018. (*Id.* at ¶¶ 28, 32, 34, 37).

## DISCUSSION

### I. Petition

#### A. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

### B. Statutory Basis for Petitioner's Detention

As a threshold matter, the Court considers what statutory provision governs Petitioner's custody. Respondents contend in their opposition to the Petition that Petitioner is "detained in post-final order custody under INA § 241, 8 U.S.C. § 1231" (Dkt. 8 at 2), while Petitioner appears to be contending that he is detained under § 236(c) of the INA, which is codified at 8 U.S.C. § 1226(c), but Petitioner also makes references to § 1231 (*see* Dkt. 1 at 6-7, 10).

In 2016, the Second Circuit decided as a matter of first impression that a reinstated removal order is not "administratively final" during the pendency of withholding-only proceedings, and that accordingly, § 1231 did not govern detention under such circumstances. *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016). A circuit split exists on this issue—the Fourth Circuit recently agreed with the Second Circuit, *see Guzman Chavez v. Hott*, No. 18-6086, 2019 WL 5078367, at *4 (4th Cir. Oct. 10, 2019), while the Third and Ninth Circuits have held to the contrary, *see Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 215-16 (3d Cir. 2018); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 830-31 (9th Cir. 2017). However, this Court is bound by the Second Circuit's determination in *Guerra*, and accordingly finds that Petitioner's reinstated removal order is not administratively final, because his withholding-only proceedings are not yet completed, and that his detention is therefore not governed by § 1231. *See Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (finding immigration detainee's detention governed by § 1226 and not § 1231 where petition for review is pending before a court of appeals).

- 5 -

The Court further finds that Petitioner's detention is governed by § 1226(c), because of his criminal history. *See* 8 U.S.C. § 1226(c)(1)(B) (mandating detention of any alien who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title"); 8 U.S.C. § 1227(B)(i) (stating that "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"); *see also Nielsen v. Preap*, 139 S. Ct. 954, 971 (2019) (holding that § 1226(c) applies to "any alien linked with a predicate offense identified in subparagraphs (A)–(D), regardless of exactly when or even whether the alien was released from criminal custody").

C.    **Petitioner's Claims**

The Petition challenges the constitutionality of Petitioner's continued detention under § 1226(c). (Dkt. 1). In particular, Petitioner contends that his detention violates his right to both substantive and procedural due process. Petitioner seeks immediate release, and has not made an alternative request for a bond hearing. (*Id.* at 12). For the reasons that follow, the Court denies the Petition.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. "It is well-settled that aliens have rights of procedural due process." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991). "These protections extend even to

aliens . . . 'whose presence in this country is unlawful.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)).

As explained above, the Court has concluded that Petitioner is detained pursuant to § 1226(c), which "provides for mandatory detention of criminal aliens," *Mapp v. Reno*, 241 F.3d 221, 224 (2d Cir. 2001). An alien detained pursuant to § 1226(c) may seek discretionary release from DHS only if "he is a witness, a potential witness, a cooperator, or an immediate family member or close associate of someone who is acting as a witness, potential witness, or cooperator in an investigation into major criminal activity. No other category of discretionary release exists under the statute." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, 2019 WL 4137822 (2d Cir. May 7, 2019); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) ("§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes.").

The law regarding the constitutionality of the mandatory detention provided for under § 1226(c) is somewhat unsettled. In *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), the Second Circuit considered an as-applied challenge to § 1226(c) and joined the Third, Sixth, and Ninth Circuits in concluding that, to avoid "serious constitutional concerns," § 1226(c) must be read to include a temporal limitation on detention. *Id.* at 613. The *Lora* court reasoned that, under *Demore*, "for detention under the statute to be reasonable, it must be for a brief period of time." *Id.* at 614. As such, the *Lora* court adopted a bright-line rule that "an immigrant detained pursuant to section 1226(c) must be afforded a bail

hearing before an immigration judge within six months of his or her detention." *Lora*, 804 F.3d at 616. The Second Circuit further held that the detainee "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* (citing *Rodriguez*, 715 F.3d at 1131).

Subsequently, on February 27, 2018, the Supreme Court issued *Jennings*, 138 S. Ct. 830, which rejected the Ninth Circuit's analysis of § 1226(c). The *Jennings* Court held that it was not a "plausible statutory construction" to interpret § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention," and concluded that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* at 846-47. Because reversal of the underlying Ninth Circuit decision was mandated on statutory grounds, the *Jennings* Court expressly declined to reach the petitioner's constitutional claims on the merits, instead remanding to the court of appeals for consideration of those claims in the first instance. *Id.* at 851.[1]

On March 5, 2018, in light of its decision in *Jennings*, the Supreme Court granted *certiorari* in *Lora*, vacated the judgment in that matter, and remanded the matter to the Second Circuit for further consideration. *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

---

[1] The Ninth Circuit, in turn, has remanded those issues to the district court for it to consider in the first instance. *See Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018). As of yet, the district court has not issued a subsequent decision addressing the parties' constitutional arguments.

On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

Following *Jennings*, numerous courts in the Second Circuit have addressed as-applied constitutional challenges to immigration detention. These courts have noted that an important difference exists between substantive and procedural due process challenges to an immigrant's confinement. In substantive due process challenges, the court considers whether the length of detention "is so manifestly unreasonable that [the petitioner's] release is required regardless of whether the government has evidence that he is, for example, a danger or a flight risk." *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *4 n.3 (W.D.N.Y. July 31, 2019); *see Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty."). In other words, if successful with a substantive due process claim, the petitioner is entitled to be released from custody.

On the other hand, in procedural due process challenges the court does not consider what the substantive outcome of the case should be—*i.e.*, whether the petitioner should be released—but rather considers whether the petitioner is entitled to some sort of process, such as a bond hearing. *See Clerveaux*, 2019 WL 3457105, at *4 n.3 ("[T]his Court considers only whether—seventeen months into [the petitioner]'s detention—the government must finally demonstrate to someone that there is some evidence that [the

petitioner]'s detention serves some purpose."). In this case, Petitioner has raised both substantive and procedural due process challenges. The Court addresses both in turn.

### 1. Substantive Due Process

Petitioner alleges that his prolonged detention has resulted in the violation of his right to substantive due process and requests that he be immediately released. The Court denies the Petition on this ground for the reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty*, 943 F.2d at 209. "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Plaintiff has already been removed to El Salvador twice, and there is no reason to anticipate that DHS would not be able to expediently remove him for a third time, should his PFR ultimately be denied. Petitioner "may not rely on the extra time resulting" from his appeal "to claim that his prolonged detention violates

substantive due process." *Doherty*, 943 F.2d at 211; *see Thompson v. Lynch*, No. 16-CV-6608 (CJS), 2017 WL 344970, at *7 (W.D.N.Y. Jan. 24, 2017) ("Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA."). Accordingly, the Court denies the portion of the Petition that rests on substantive due process grounds as well as Petitioner's motion for release.

### 2. **Procedural Due Process**

Petitioner also asserts that his procedural due process rights have been violated. However, he does not ask for a bond hearing or other process, but seeks only immediate release. (*See* Dkt. 1 at 12). Nonetheless, in light of his *pro se* status, the Court has considered whether he is entitled to a second bond hearing at this stage of the proceedings, and concludes that he is not.

As a threshold matter, it is necessary to note that Petitioner was granted a bond hearing under *Lora* on July 27, 2017. (*See* Dkt. 7-1 at ¶ 26; *see also* Dkt. 7-2 at 17). Importantly, at the *Lora* bond hearing, the Government bore the burden of "establish[ing] by clear and convincing evidence that [Petitioner] pose[d] a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616. The IJ concluded that the Government had born that burden with respect to Petitioner's risk of flight (*see* Dkt. 7-2 at 17), and Petitioner concedes in his Petition that he "does pose a risk of flight," but argues that he "is not a danger to the community" (Dkt. 1 at 5). This case is therefore distinguishable from the typical case involving a petitioner detained pursuant to § 1226(c) who has never received

a bond hearing, as well as from cases where a petitioner detained pursuant to § 1226(a) was granted a bond hearing but was required to bear the burden of showing that he was neither a flight risk nor a danger to the community. Instead, the Court must consider whether Respondents were required to hold additional, subsequent bond hearings as Petitioner's detention continued, without any showing by Petitioner of a change in circumstances.

In *Pineda v. Shanahan*, 258 F. Supp. 3d 372 (S.D.N.Y. 2017), another court in this Circuit expressly considered whether due process requires "periodic detention review hearings" after an initial bond hearing, and concluded that it did not. *Id.* at 378-79. The *Pineda* court explained that there was no basis in existing due process case law to conclude that "the Government, as a matter of course, must reevaluate a detainee's entitlement to bond every six months with no showing required from the detainee." *Id.* at 379. Instead, the *Pineda* court concluded, after a bond hearing is held, it is permissible to require the detainee to show a change in circumstances in order to trigger a bond redetermination hearing. *Id.*; *see also Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *6 (S.D.N.Y. Aug. 7, 2018) (holding that a petitioner seeking redetermination of his bond status "bears the burden in the first instance of showing, by a preponderance of the evidence, that his circumstances have changed materially since his first *Lora* hearing," and ordering a second bond hearing where the petitioner contended that "his circumstances have changed materially and significantly in the almost seventeen months since the *Lora* hearing" (internal quotations marks omitted)).

The Court agrees with the reasoning in *Pineda* and concludes that procedural due process does not *per se* require periodic bond redetermination hearings after an initial bond

hearing. Instead, an individualized inquiry is required, and the key factor is whether the petitioner has plausibly alleged a change in circumstances. Here, Petitioner has not alleged that his circumstances have materially changed since his initial bond hearing. To the contrary, the Petition fails to discuss or acknowledge in any way the fact that Petitioner was afforded a bond hearing under *Lora*. On this record, Petitioner cannot show that he has been deprived of due process because he has not been granted a bond redetermination hearing.[2]

## CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is denied without prejudice and Petitioner's motion for release from custody (Dkt. 6) is denied. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 25, 2019
Rochester, New York

---

[2] In the event that Petitioner does undergo a material change in circumstances and nonetheless continues to be detained, he is not foreclosed from commencing a subsequent action seeking a bond redetermination hearing. *See Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *5 (W.D.N.Y. Jan. 18, 2019) ("[T]his Court rejects [the petitioner's] due process claims without prejudice to filing another petition if his § 1226(c) detention becomes unreasonably prolonged.").